140514

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROBERT THORNTON, JULIA THORNTON
and JACKIE COSTA

                            Plaintiffs,

          -against-

NEW YORK ISLANDERS HOCKEY CLUB, L.P.,

                           Defendant.
-----------------------------------------------------------------X

**CV-05 5715** 

**COMPLAINT**

**JURY TRIAL REQUESTED**

Index No.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 0 8 2005 ★
LONG ISLAND OFFICE

WEXLER, J.

LINDSAY, M.

Plaintiffs, Robert Thornton, Julia Thornton and Jackie Costa (hereinafter collectively "plaintiffs"), by their attorneys, Reisman Peirez & Reisman, L.L.P., as and for their complaint, allege:

Thornton et al v. New York Islanders Hockey Club, L.P.                                                                    Doc. 1

### JURISDICTION AND VENUE

       1.     This case arises under the federal Age Discrimination in Employment Act ("ADEA") (29 *U.S.C.* §621 *et seq.*) and New York State Executive Law §296.

       2.     Jurisdiction is conferred on this Court by 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1367 (supplemental jurisdiction over state law claims.)

       3.     Venue is proper in this district pursuant to 20 U.S.C. § 1391(b) because defendant resides therein.

140514

4. On March 11, 2005, plaintiffs filed a complaint regarding the below-described conduct with the United States Equal Employment Opportunity Commission through a joint filing with the New York State Division of Human Rights. On October 7, 2005, a right-to-sue letter was issued to each plaintiff.

## PARTIES

5. Plaintiffs Robert Thornton and Julia Thornton, husband and wife, currently reside at 22 Creek Lane, Oyster Bay, New York 11771.

6. Plaintiff Jackie Costa resides at 34 Constable Lane, Levittown, New York 11756.

7. Upon information and belief, defendant, New York Islanders Hockey Club, L.P., is a domestic limited partnership with an office located at 1535 Old Country Road, Plainview, New York 11803, and is an employer as defined under the ADEA and Exec. L. §296.

8. Plaintiff Robert Thornton was born on October 8, 1947, and he is over the age of forty (40).

9. Plaintiff Julia Thornton was born on July 25, 1949, and she is over the age of forty (40).

10. Plaintiff Jackie Costa was born on July 13, 1956, and she is over the age of forty (40).

140514

## THE FACTS COMMON TO BOTH CAUSES OF ACTION

11. In 1991, Robert and Julia Thornton became partners in a company called Long Island Skating Academy, Inc. ("LISA").

12. LISA owned and operated an ice skating rink facility in Syosset, New York. The ice rink facility consisted of two ice skating rinks, an office, a team gym and a snack shop (collectively, the "Rink").

13. In or about 1997, LISA sold the Rink to Family Golf, which operated the Rink under the trade name Iceworks.

14. Prior to 2001, the Rink was used, among other things, as the home facility for the Nassau County high school hockey league, and was also utilized by other youth and adult hockey leagues, as well as the New York City Police Department hockey team.

15. From July 1991 through November 1994, and then beginning again in 1997, Robert Thornton served as the general manager of the Rink, running the day-to-day operations, and Julia Thornton served as the sales manager for the Rink.

16. Prior to March 2, 2001, Jackie Costa was employed as the Rink's office manager and bookkeeper.

17. In or about September 1992, defendant, the corporate owner of the New York Islanders professional hockey club, entered into an agreement whereby defendant agreed to lease the Rink for its hockey team's practice facility.

140514

18. On or about March 2, 2001, an agreement was entered into whereby the Rink was sold to defendant. At that time, at defendant's request and direction, Robert Thornton became an employee of defendant and continued to serve as the general manager for the Rink, Julia Thornton became an employee of defendant and remained the sales manager for the Rink, and Jackie Costa became an employee of defendant and continued as the office manager and bookkeeper.

19. From March 2001 through June 2003, plaintiffs satisfactorily performed all of their job responsibilities, and received no complaints regarding the operation of the Rink, or with their job performances.

20. Then, in or about June 2003, defendant hired Heather Umen, a woman in her late-20's, to serve as Chief Executive Officer of the Rink. The hiring of Ms. Umen was the start of defendant's effort to establish a "younger" appearance for the Rink.

21. Upon Ms. Umen being appointed chief executive officer, Mr. Thornton was informed by Michael Picker, defendant's Senior Vice President of Operations, that Mr. Thornton was now required to report to Ms. Umen. Mr. Picker also told Mr. Thornton that Ms. Umen was in charge of all business matters involving the Rink. Finally, Mr. Picker informed Mr. Thornton that he was no longer to contact Mr. Picker about the Rink but rather, all communications were to go through Ms. Umen.

22. Almost immediately upon her arrival at the Rink, Ms. Umen proceeded to change and alter all phases of the Rink's business operations and instituted a

140514

policy to drive out the older employees at the Rink and replace them with younger individuals.

23. This policy to drive out older employees at the Rink included ridiculing them in public, and creating a hostile working environment.

24. For example, following Ms. Umen's arrival at the Rink, several vendors and customers inquired about Mr. Thornton's role. Ms. Umen, and other employees of defendant under her supervision, repeatedly told these individuals that Mr. Thornton "was nothing at the Rink."

25. Additionally, Ms. Umen frequently stated in the presence of Ms. Costa, and in front of office personnel at the Rink, that she was looking to hire "young and energetic girls" to work in the Rink's front office.

26. In fact, at a meeting held in the afternoon of February 17, 2004, among Ms. Umen, Julia Thornton and Dan Marshall, the Rink's hockey director, Ms. Umen stated three times that she would hire "young and energetic girls" for office employment.

27. Plaintiffs confronted Ms. Umen about these statements. Mr. Thornton specifically asked Ms. Umen if she stated she was going to hire "young and energetic girls." Ms. Umen told Mr. Thornton not to worry, that he couldn't "hear anyway."

28. Ms. Umen proceeded to hire young women to perform work at the Rink for which they were not qualified. As a result, Ms. Costa was required to take on

140514

additional responsibilities to make up for the inexperienced and incompetent performance by the younger workers that Ms. Umen had hired.

29. Further, beginning in 2003, Robert and Julia Thornton, as well as Ms. Costa, were not given their customary annual evaluations nor given their annual merit raises, while younger employees were evaluated and provided with merit raises.

30. On February 5, 2004, plaintiffs had a meeting with the defendant's principal to address defendant's efforts to drive out the older workers at the Rink.

31. At this meeting, the defendant's principal asked Mr. Thornton his age and stated he had a "problem" with Mr. Thornton.

32. Then, when Julia Thornton told defendant's principal that plaintiffs had concerns with Ms. Umen, defendant's principal immediately threw his arms in the air and exclaimed that he did "not want to hear it." He told plaintiffs that Ms. Umen was "a great girl" and "she's in charge."

33. In or about March 2004, Ms. Umen was replaced by Larry Fitzpatrick, an individual approximately 30 years old.

34. Mr. Fitzpatrick continued the process of forcing older employees to leave, and made numerous disparaging remarks regarding the older employees.

35. These remarks included his greeting Mr. Thornton with "how you doing, old man," and continued references to the fact that Ms. Costa was a grandmother.

36. The pattern of disparaging remarks and open disrespect towards plaintiffs and their age continued after the arrival of Mr. Fitzpatrick, and defendant

- 6 -

140514

continued hiring young women to operate the Rink who had no experience and who were incapable of performing their job responsibilities.

37. Thereafter, Mr. Fitzpatrick was replaced by Jessica Tuttle, a woman under 30-years-old. In an attempt to address the issue of hiring younger, inexperienced workers, Ms. Costa informed Ms. Tuttle that the replacement of older employees with inexperienced and incapable younger individuals was creating stress that was damaging to her health. Ms. Costa was told that nothing was going to change.

38. As a result of the hostile work environment directed at older employees and defendant's refusal to address the situation, Robert and Julia Thornton were constructively discharged by defendant on May 24, 2004, and left their employment on June 4, 2004.

39. Jackie Costa was constructively discharged by defendant on September 21, 2004.

40. Plaintiffs were forced to terminate their employment because of their age, especially because defendant openly sought to hire "young and energetic" persons to perform management and operation duties at the Rink.

41. Defendant was improperly motivated to seek plaintiffs' removal because of some preconceived notion that older people could not successfully operate and manage the Rink and its offices.

140514

42.     At the time their employment was terminated, Robert Thornton's annual salary was $68,400, plus benefits, Julia Thornton's annual salary was $48,000, plus benefits, and Jackie Costa's annual salary was approximately $25,000, plus benefits.

43.     As a result of their wrongful termination, plaintiffs have suffered economic losses, as well as emotional distress.

### AS AND FOR A FIRST CAUSE OF ACTION
(Age Discrimination in Employment Act)

44.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "43" as if fully set forth herein.

45.     Defendant's actions violated the federal Age Discrimination in Employment Act ("ADEA") (29 U.S.C. §621 *et seq.*)

46.     By reason of the foregoing, defendant is liable to plaintiffs for compensatory damages in the amount of $1 million, punitive damages in the amount of $2 million, together with attorneys' fees for this action.

### AS AND FOR A SECOND CAUSE OF ACTION
(New York State Executive Law)

47.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "46" of this complaint as if fully set forth herein.

48.     Defendant's actions violated the New York State Human Rights Laws (Executive Law §290 *et seq.*).

140514

49. By reason of the foregoing, defendant is liable to plaintiffs for compensatory damages in the amount of $1 million, punitive damages in the amount of $2 million, together with attorneys' fees for this action.

**WHEREFORE**, plaintiffs demand relief for (1) $1 million in compensatory damages and $2 million in punitive damages on the first cause of action; (2) $1 million in compensatory damages and $2 million in punitive damages on the second cause of action; (4) attorneys' fees, costs and disbursements incurred as a result of this action; and (5) any other and further relief this Court deems just and necessary.

Dated: Garden City, New York
       December 2, 2005

**REISMAN, PEIREZ & REISMAN, L.L.P.**

By: _____
    E. Christopher Murray (EM-8980)
    Attorneys for Plaintiff
    1305 Franklin Avenue
    Garden City, New York
    (516) 746-7799

- 9 -